# CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY *v.* STATE OF ARKANSAS.

**ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.**

No. 50. ·Argued November 11, 1910.—Decided February 20, 1911.

A State is under an obligation to establish necessary and reasonable regulations for the safety of all engaged in business or domiciled within its limits, and passengers on trains of interstate carriers are entitled while within a State to the same protection of valid local laws as are citizens of the State.

The States have never surrendered the power to care for the public safety; and the validity of police statutes enacted to that end which are not purely arbitrary or in conflict with a power granted to the general government cannot be questioned in Federal courts.

A state regulation that is uniform on all railroads of the class to which it is applicable is not unconstitutional as denying equal protection of the law because it does not apply to railroads less than fifty miles in length. The classification is a reasonable one.

A state statute prescribing a not unreasonable number for the crews of freight trains is not an obstruction to, or burden on, interstate commerce, but an aid thereto; and so *held* that the "full crew" act of Arkansas is not unconstitutional under the commerce clause of the Federal Constitution, Congress not having acted in regard thereto.

While Congress may in its discretion take under its charge the subject of equipment of interstate trains, until it does so the States may prescribe proper police regulations in regard thereto without violating the commerce clause of the Federal Constitution.

86 Arkansas, 412, affirmed.

THE facts, which involve the constitutionality of a law of Arkansas relating to equipment of railway trains, are stated in the opinion.

*Mr. Thomas L. Buzbee* and *Mr. Laurence Maxwell,* with whom *Mr. Edward S. Pierce* and *Mr. Erasmus C. Lindley* were on.the brief, for plaintiff in error:

The full crew act of Arkansas is unconstitutional because it undertakes to regulate interstate commerce and is repugnant to § 8, Art. I of the Constitution of the United States. *Sherlock* v. *Alling,* 93 U. S. 102; *Hall* v. *DeCuir,* 95 U. S. 487; *Railway Co.* v. *Husen,* 95 U. S. 465; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Atl. Coast Line R. R. Co.* v. *Wharton,* 207 U. S. 328; Act of February 4, 1887; *Tex. & Pac. Ry. Co.* v. *Int. Comm. Comm.,* 162 U. S. 197; Act of March 2, 1893; *Johnson* v. *So. Pac. Ry. Co.,* 196 U. S. 1; Act of March 3, 1901; Act of March 3, 1903; Act of February 23, 1905; Joint Resolution of June 30, 1906; Act of March 4, 1907; Rep. Int. Comm. Comm., 1905, p. 78; Act of April 22, 1908; Act of June 29, 1906; *Sinnot* v. *Mobile Pilot Comm.,* 22 How. 227; *Henderson* v. *New York,* 93 U. S. 274; *Inman Steamship Co.* v. *Tinker,* 94 U. S. 238; ·*Bond* v. *Turck,* 95 U. S. 463; *Wisconsin* v. *Duluth,* 96 U. S. 387; *Smith* v. *Alabama,* 124 U. S. 465; *Stoutenburgh* v. *Hennick,* 129 U. S. 148; *G., C. & S. F. Ry. Co.* v. *Hefley,* 158 U. S. 98; *Int. Comm. Comm.* v. *Detroit Ry. Co.,* 167 U. S. 633; *Asbell* v. *Kansas,* 209 U. S. 251; *State* v. *C., M. & St. P. Ry. Co.,* 117 N. W. Rep. 686; *State* v. *Mo. Pac. Ry. Co.,* 111 S. W. Rep. 500.

The act, as applied to interstate commerce, is arbitrary, unreasonable and contrary to § 8, Art. I, and the due process clause of.§ 1, of the Fourteenth Amendment. *St. L., I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Houston & Tex. Cent.* v. *Mayes,* 201 U. S. 321; *McNeill* v. *Southern Railway Co.,* 202 U. S. 543.

The act is repugnant to the equal protection.clause of the Constitution. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *G., C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *A., T. & S. F. Ry. Co.* v. *Matthews,* 174 U. S. 96; *Cotting* v. *Stock Yards*

*Co.,* 183 U. S. 79; *Connolly* v. *Sewer Pipe Co.,* 184 U. S. 540.

*Mr. W. L. Terry* and *Mr. Hal L. Norwood,* Attorney General of the State of Arkansas, for defendant in error:

The full crew act of Arkansas is in no just sense a regulation of interstate commerce, but is purely a police regulation, and as such is not repugnant to § 8, Art. I, of the Constitution of the United States. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Walling* v. *Michigan,* 116 U. S. 446; *Hall* v. *DeCuir,* 95 U. S. 485; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Smith* v. *Alabama,* 124 U. S. 465; *Sherlock* v. *Alling,* 93 U. S. 99; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Nashville &c. Ry. Co.* v. *Alabama,* 128 U. S. 96; *Mobile County* v. *Kimball,* 102 U. S. 691; *West. Un. Tel. Co.* v. *James,* 162 U. S. 656; *Chicago &c. R. R. Co.* v. *Solan,* 169 U. S. 133; *Gladson* v. *Minnesota,* 166 U. S. 427; *N. Y., N. H. & H. Ry. Co.* v. *New York,* 165 U. S. 628; *Erb* v. *Morasch,* 177 U. S. 544; *L. S. & M. S. R. R. Co.* v. *Ohio,* 133 U. S. 286; *Hennington* v. *Georgia,* 163 U. S. 299; *Pierce* v. *Van Dusen,* 98 Fed. Rep. 693; *Southern Ry. Co.* v. *King,* 217 U. S. 524; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 27; *Mo. Pac. Ry. Co.* v. *Kansas,* 216 U. S. 262; *Thorp* v. *Railway Co.,* 27 Vermont, 129; *G., C. & S. F. Ry. Co.* v. *Hefley,* 158 U. S. 98; *Sinnot* v. *Commissioners,* 22 How. 227; *Wisconsin* v. *Duluth,* 96 U. S. 387; *Asbell* v. *Kansas,* 209 U. S. 251; *Reid* v. *Colorado,* 187 U. S. 137; *M., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613; *Schlemmer* v. *Railway Co.,* 205 U. S. 10.

The act as applied to interstate commerce is a rightful exercise of the police power inherent in the State; is neither arbitrary, unreasonable nor contrary to § 8, Art. I, and the due process clause of § 1, of the Fourteenth Amendment to the Constitution of the United States. *Atl. Coast Line R. R. Co.* v. *No. Car. R. R. Comm.,* 206 U. S. 1; 2 Tiedman on State and Federal

Control, 987; *Norwood* v. *Baker*, 172 U. S. 269; *Wisconsin & M. P. R. R. Co.* v. *Jacobson*, 179 U. S. 287; *L. S. & M. S. Ry. Co.* v. *Smith*, 173 U. S. 684; *St. L. & S. F. R. R. Co.* v. *Gill*, 156 U. S. 649; *Smyth* v. *Ames*, 169 U. S. 466; *Minn. & St. Louis R. R. Co.* v. *Minnesota*, 186 U. S. 257; *Dow* v. *Beidelman*, 125 U. S. 680; *Chicago & G. T. R. R. Co.* v. *Wellman*, 143 U. S. 339; *Covington & Louisville Turnpike Co.* v. *Sanford*, 164 U. S. 578; Freund on Police Power, §§ 63, 549, 550; *H. & T. C. Ry. Co.* v. *Mayes*, 201 U. S. 321; Cooley, Const. Lim., 831; *License Cases*, 5 How. 579; *Louisville &c. R. R. Co.* v. *Kentucky*, 183 U. S. 518; *Austin* v. *Tennessee*, 179 U. S. 349; *Pennsylvania Ry. Co.* v. *Hughes*, 191 U. S. 477; *Railroad Co.* v. *Fuller,* 17 Wall. 460; *L. S. & M. S. Ry. Co.* v. *New York*, 165 U. S. 629; *Illinois &c. R. R. Co.* v. *Illinois*, 163 U. S. 142; *State* v. *Indiana &c. R. R. Co.*, 133 Indiana, 69; *Cooley* v. *Board of Wardens*, 12 How. 299; *The Jane Gray*, 21 How. 184; *Steamship Co.* v. *Jolliffe*, 2 Wall. 450; *Olson* v. *Smith*, 195 U. S. 332; *The William Law*, 14 Fed. Rep. 792.

The act as construed by the Supreme Court of Arkansas is not repugnant to the equal protection clause of the Constitution of the United States. *Atl. Coast Line R. R. Co.* v. *Mazursky*, 216 U. S. 122; *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322; *Armour Packing Co.* v. *Lacey*, 200 U. S. 226; *Kahrer* v. *Stewart*, 197 U. S. 60; *Pullman Co.* v. *Adams*, 189 U. S. 426; *Osborne* v. *Florida*, 164 U. S. 650; *C., B. & Q. Ry. Co.* v. *Iowa*, 94 U. S. 155; *Railway Co.* v. *May*, 194 U. S. 267; *G., C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Atchison &c. Ry. Co.* v. *Matthews*, 174 U. S. 96; *Peik* v. *Chicago &c. Ry. Co.*, 94 U. S. 164; *People* v. *Smith*, 32 L. R. A. 857; *State* v. *Gerhardt*, 33 L. R. A. 319; *Interstate Ry. Co.* v. *Massachusetts*, 207 U. S. 88; *Missouri &c. Ry. Co.* v. *Mackey*, 127 U. S. 205; *Holden* v. *Hardy*, 169 U. S. 385; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 561; *Western Turf Assn.* v. *Greenburg*, 204 U. S. 362; *Hayes* v. *Missouri,* 120 U. S. 71; *Jones* v. *Brin*, 165

U. S. 182; *Mogoun* v. *Illinois Savings Bank*, 170 U. S. 294; *Heath* v. *Worst*, 207 U. S. 354; *Welch* v. *Swasey*, 214 U. S. 91; *McLean* v. *State*, 211 U. S. 539; *St. Louis Coal Co.* v. *Illinois*, 185 U. S. 203.

MR. JUSTICE HARLAN delivered the opinion of the court.

Two actions were instituted by the State of Arkansas in one of its courts against the Chicago, Rock Island and Pacific Railway Company, a corporation of Illinois engaged in railroad business in several States. The company, it was agreed, entered Arkansas for purposes of railroad business, complying with all the conditions of the laws of that State authorizing foreign railroad corporations to do such business within its limits.

The complaint alleged that the defendant company on a named day and in violation of the law of Arkansas operated and ran in that State a freight train of more than twenty-five cars without having equipped such train with as many as three brakemen; and that the railroad over which the train was operated was more than fifty miles in length. The State asked a judgment in each case against the railway company for $500. The company filed in each case both an answer and a general demurrer.

The suits were based on an Arkansas statute (Ark. Laws, 1907, No. 116, p. 295) prescribing the minimum number of employés to be used in the operation of freight trains and providing a penalty for violating its provisions.

The statute is in these words: "§ 1. No railroad company or officer of court owning or operating any line or lines of railroad in this State and engaged in the transportation of freight over its line or lines shall equip any of its said freight trains with a crew consisting of less than an engineer, a fireman, a conductor, and three brakemen, regardless of any modern equipment of automatic couplers and air brakes, except as hereinafter provided. § 2. This

act shall not apply to any railroad company or officer of court whose line or lines are less than fifty miles in length, nor to any railroad in this State, regardless of the length of the said lines, where said freight train so operated shall consist of less than twenty-five cars, it being the purpose of this act to require all railroads in this State whose line or lines are over fifty miles in length engaged in hauling a freight train consisting of twenty-five cars or more, to equip the same with a crew consisting of not less than an engineer, a fireman, a conductor, and three brakemen, but nothing in this act shall be construed so as to prevent any railroad company or officer of court from adding to or increasing its crew beyond the number set out in this act. § 3. Any railroad company or officer of court violating any of the provisions of this act shall be fined for each offense not less than one hundred dollars nor more than five hundred dollars, and each freight train so illegally run shall constitute a separate offense. Provided, the penalties of this act shall not apply during strikes of men in train service of lines involved." Ark. Laws, 1907, No. 116.

The railway company's answer in each case contained six paragraphs. The court sustained the demurrer to paragraphs 1, 2, 3, 4 and 6 (the defendant excepting), and thereupon, by stipulation, the two actions were consolidated for the purpose of a trial on paragraph five, which was as follows: "Defendant states that its said train was equipped with automatic couplers and air brakes, so that the cars thereof could be coupled and uncoupled without the necessity of brakemen going between the cars, and could be stopped by the application of the air brakes by the engineer of said train without the intervention or assistance of the conductor or brakeman, as required by act of Congress and the order of the Interstate Commerce Commission made thereunder; that it had employed on said train a conductor and two brakemen and that the employment of another brakeman on said train was un-

necessary, because there were no duties connected with the running and operating of said train to be performed by a third brakeman, and said act, in attempting to require the defendant to employ three brakemen on said train, attempted to require the defendant to expend a large amount of money for a useless and unnecessary purpose and to deprive the defendant of its property without due process of law, and is therefore in violation of and in conflict with Section One of the Fourteenth Amendment to the Constitution of the United States."

The consolidated causes were by agreement of the parties tried by the court. The result in each case was a judgment against the railway company for $100. Upon appeal by the company to the Supreme Court of Arkansas the action of the trial court was affirmed. 86 Arkansas, 412.

In the state court the railway company assailed the act in question as being in conflict with the Fourteenth Amendment, as well as of the commerce clause, of the Constitution of the United States. But the Supreme Court of Arkansas overruled these objections, holding that the act was not to be taken as inconsistent with the Constitution of the United States. The case is here for review on the question whether the statute is in violation of the Constitution.

In our judgment, these questions are concluded by former decisions and no extended discussion of them is now required. Yet, an examination of some of the decisions will be proper in order to show the precise grounds on which this court has determined whether state enactments of a particular kind were regulations of interstate commerce or in violation of the Fourteenth Amendment.

A leading case on the general subject is *Smith* v. *Alabama*, 124 U. S. 465, 474, 482, which involved the validity under the Constitution of the United States of a statute of Alabama making it a misdemeanor for an engineer to

operate, *in that State,* a train of cars used for the transportation of persons or freight without first undergoing an examination before and obtaining a license from a board appointed by the Governor. The statute provided that before issuing a license the board should inquire into the character and habits of the applicant; that no license should be granted if he was found to be of reckless or intemperate habits; that any license granted should be forfeited if, upon notice, the engineer was found to have been intoxicated within six hours before or during the time he was engaged in running a railroad engine; and that the license should be revoked or canceled if the engineer was ascertained from any cause to be unfit or incompetent. That case related to an engineer whose ordinary run was over the Mobile and Ohio Railroad Company's road between Mobile, Alabama, and Corinth, Mississippi. He never handled the engine of any train between points wholly within Alabama. As an employé of the company he also operated an engine drawing a passenger train between St. Louis and Mobile. It was contended that the statute was repugnant to the commerce clause of the Constitution of the United States. This court referred to the decision in *Sherlock* v. *Alling,* 93 U. S. 99, 102, which involved the question whether an Indiana statute authorizing the personal representative of a deceased person whose death was caused by the wrongful act or omission of another, could be applied where the death was the result of a collision between steamboats *navigating the Ohio River.* And, speaking by Mr. Justice Matthews, it said: "Legislation, in a great variety of ways may affect commerce and persons engaged in it without constituting a regulation of it within the meaning of the Constitution. . . . And it may be said generally, that the legislation of a State, not directed against commerce or any of its regulations, but relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of

commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit." The court proceeded: "In conclusion, we find, therefore, first, that the statute of Alabama, the validity of which is under consideration, is not, considered in its own nature, a regulation of interstate commerce, even when applied as in the case under consideration; secondly, that it is properly an act of legislation within the scope of the admitted power reserved to the State to regulate the relative rights and duties of persons being and acting within its territorial jurisdiction, intended to operate so as to secure for the public, safety of person and property; and, thirdly, that, so far as it affects transactions of commerce among the States, it does so only indirectly, incidentally, and remotely, and not so as to burden or impede them, and, in the particulars in which it touches those transactions at all, it is not in conflict with any express enactment of Congress on the subject, nor contrary to any intention of Congress to be presumed from its silence."

In *Nashville &c. Railway* v. *Alabama,* 128 U. S. 96, 101, the question was as to the validity, so far as interstate commerce was concerned, of a statute of Alabama enacted for the protection of the travelling public against accidents caused by color-blindness and defective vision on the part of railroad employés, and which provided for an examination before a state board of any person seeking a position that involved the running or management of a railroad train. In that case the railway company operated its lines through several States and employed as a train conductor one who had not obtained a certificate of his fitness so far as color-blindness and visual powers were concerned. After referring to *Smith* v. *Alabama,* above cited, as holding that the statute of Alabama, involved in that case, was not displaced by any express

enactment of Congress in the exercise of its power over
commerce, and that until so displaced it remained "as the
law governing carriers in the discharge of their obliga-
tions, whether engaged in purely internal commerce of the
State, or in commerce among the States," this court,
speaking by Mr. Justice Field, said: "The same observa-
tion may be made with respect to the provisions of the
state law for the examination of parties to be employed
on railways with respect to their powers of vision. Such
legislation is not directed against commerce, and only
affects it incidentally, and therefore cannot be called,
within the meaning of the Constitution, a regulation of
commerce."

But the case more nearly analogous to the present one
is that of *N. Y., N. H. & H. Railroad* v. *New York*, 165
U. S. 628, 631, 632–633, where the court was required to
determine the validity under the Constitution of the
United States of a statute of New York regulating the
heating of steam passenger cars and directing guards and
guard-posts to be placed on railroad bridges and trestles
and the approaches thereto. The statute provided that
no steam-railroad doing business in New York after a
named day should heat its passenger cars on other than
mixed trains by any stove or furnace kept inside of the
car or suspended therefrom, except that in case of acci-
dent or other emergency such stove or furnace, with nec-
essary fuel, could be temporarily used; that where any
cars had been equipped with apparatus to heat by steam,
hot water or hot air from the locomotive or from a special
car the stove then in use could be retained and used when
the car was standing still; and, that the statute should not
apply to railroads less than fifty miles in length nor to the
use of stoves of a pattern and kind to be approved by the
state railroad commissioners for cooking purposes in din-
ing cars. The New York, New Haven and Hartford Rail-
road Company, a Connecticut corporation, during a cer-

tain period named, ran trains of passenger cars over its route from the city of New York to Hartford and from Hartford to New York, and on through trains as well as on its road in New York other than on mixed trains, the company heated its cars by stoves and furnaces kept within the cars. An action was brought against the railway company for violation of the above statute, and there was a verdict in favor of the State for the penalties imposed. That judgment was affirmed by the Court of Appeals of New York. 142 N. Y. 646.

It was contended in that case that the New York statute was repugnant both to the commerce clause of the Constitution and to the Fourteenth Amendment. In the opinion of this court, the principle announced in *Gibbons* v. *Ogden,* 9 Wheat, 1, 211, that the mere grant to Congress of the power to regulate commerce did not of its own force and without legislation by Congress impair the authority of the States to establish reasonable regulations for the protection of the health, the lives or the safety of their people was reaffirmed and it was said: "The statute in question had for its object to protect all persons travelling in the State of New York on passenger cars moved by the agency of steam against the perils attending a particular mode of heating such cars. There may be a reason to doubt the efficacy of regulations of that kind. But that was a matter for the State to determine. We know from the face of the statute that it has a real, substantial relation to an object as to which the State is competent to legislate, namely, the personal security of those who are passengers on cars used *within its limits.* Why may not regulations to that end be made applicable, within a State, to the cars of railroad companies engaged in interstate commerce as well as to the cars used wholly within such State? Persons travelling on interstate trains are as much entitled, while within the State, to the protection of that State, as those who travel on domestic trains. The

statute in question is not directed against interstate commerce. Nor is it within the meaning of the Constitution a regulation of commerce, although it controls, in some degree, the conduct of those engaged in such commerce. So far as it may affect interstate commerce, it is to be regarded as legislation in aid of commerce and enacted under the power remaining with the State to regulate the relative rights and duties of all persons and corporations within the limits. Until displaced by such national legislation as Congress may rightfully establish under its power to regulate commerce with foreign nations and among the several States, the validity of the statute, so far as the commerce clause of the Constitution of the United States is concerned, cannot be questioned."

It was also contended that the statute, if enforced according to its terms, would make rapid transportation difficult, if not impossible, and that to compel an interstate train to conform to its provisions would be a wholly unnecessary burden on interstate passengers. After observing that possible inconveniences could not affect the question of the power in each State to make such regulations for the safety of passengers on interstate trains as in the judgment of the State, all things considered, were reasonable, appropriate or necessary, this court said (165 U. S. 633): "Inconveniences of this character cannot be avoided so long as each State has plenary authority within its territorial limits to provide for the safety of the public, according to its own views of necessity and public policy and so long as Congress deems it wise not to establish regulations on the subject that would displace any inconsistent regulations of the State covering the same ground." In reference to the contention that the statute denied the equal protection of the laws, as prescribed by the Fourteenth Amendment, the court said (p. 633): "This contention is based upon that clause of the statute declaring that it shall not apply to railroads less than fifty

miles in length. No doubt the main object of the statute was to provide for the safety of passengers traveling on what are commonly called trunk or through lines, connecting distant or populous parts of the country, and on which the perils incident to traveling are greater than on short, local lines. But, as suggested in argument, a road only fifty miles in length would seldom have a sleeping car attached to its trains; and passengers traveling on roads of that kind do not have the apprehension ordinarily felt by passengers on trains regularly carrying sleeping cars or having many passenger coaches, on account of the burning of cars in case of their derailment or in case of collision. In any event, there is no such discrimination against companies having more than fifty miles of road as to justify the contention that there had been a denial to the companies named in the act of the equal protection of the laws. The statute is uniform in its operation upon all railroad companies doing business in the State of the class to which it is made applicable."

The principles announced in the above cases require an affirmance of the judgment of the Supreme Court of Arkansas. It is not too much to say that the State was under an obligation to establish such regulations as were necessary or reasonable for the *safety* of *all* engaged in business or domiciled within its limits. Beyond doubt, passengers on interstate carriers while within Arkansas are as fully entitled to the benefits of valid local laws enacted for the public safety as are citizens of the State. Local statutes directed to such an end have their source in the power of the State, never surrendered, of caring for the public safety of all within its jurisdiction; and the validity under the Constitution of the United States of such statutes is not to be questioned in a Federal court unless they are clearly inconsistent with some power granted to the General Government or with some right secured by that instrument or unless they are purely arbitrary in their

nature. The statute here involved is not in any proper sense a regulation of interstate commerce nor does it deny the equal protection of the laws. Upon its face, it must be taken as not directed against interstate commerce, but as having been enacted in aid, not in obstruction, of such commerce and for the protection of those engaged in such commerce. Under the evidence, there is admittedly some room for controversy as to whether the statute is or was necessary; but it cannot be said that it is so unreasonable as to justify the court in adjudging that it is merely an arbitrary exercise of power and not germane to the objects which evidently the state legislature had in view. It is a means employed by the State to accomplish an object which it is entitled to accomplish, and such means, even if deemed unwise, are not to be condemned or disregarded by the courts, if they have a real relation to that object. And the statute being applicable alike to all belonging to the same class, there is no basis for the contention that there has been a denial of the equal protection of the laws. Undoubtedly, Congress in its discretion, may take entire charge of the whole subject of the equipment of interstate cars, and establish such regulations as are necessary and proper for the protection of those engaged in interstate commerce. But it has not done so in respect of the number of employés to whom may be committed the actual management of interstate trains of any kind. It has not established any regulations on that subject, and until it does the statutes of the State, not in their nature arbitrary, and which really relate to the rights and duties of all within the jurisdiction, must control. This principle has been firmly established, and is a most wholesome one under our systems of government, Federal and state. In addition to the cases above cited, *Mobile Co.* v. *Kimball*, 102 U. S. 691; *G., C. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98; *W. U. Tel. Co.* v. *James*, 162 U. S. 656; *Chicago &c. R. R. Co.* v. *Solan*, 169 U. S. 133; *W. U. Tel. Co.* v.

*Kansas*, 216 U. S. 27; *Reid* v. *Colorado*, 187 U. S. 137; and *M.*, *K.* & *T. Ry. Co.* v. *Haber*, 169 U. S. 613, may be consulted.

*Judgment affirmed.*