Breitel, J. (dissenting).
The issue is made eminently clear in the lucid opinion for the'majority. It is whether the statutory requirement for a separate engineer assistant in the engine crew, as distinguished from the train crew, is supported on any rational evidentiary basis as relevant to safety. Thus, the majority recognizes that “ if it be a hollow device to shelter locomotive firemen from the economic consequences of diesel engine technology and of no useful purpose in the operation of the equipment, the railroads ought not be compelled to conform to it.” Indeed, it is quite impossible to ignore the repeal of sections 54-a and 54-c of the Railroad Law, at the same time that section 54-b was retained, other than as an economic compromise presented to the railroads and the railroad brotherhood. The deliberate decision of the Legislature in 1966 not to repeal the diesel engine crew requirement, although it repealed other full crew statutes, may not be considered an isolated event. It is a part of the long-past and continuing economic bargaining and accommodation, legislatively mediated between railroads and labor.
Some 50 years ago, and also some 35 years ago, under quite different conditions, the Supreme Court, presented with issues concerning the constitutionality of Arkansas statutes identical in effect with that in this case, sustained the statutes as constitutional (Chicago, R.I. & P. Ry. Co. v. Arkansas, 219 U. S. 453; Missouri Pac. R.R. Co. v. Norwood, 283 U. S. 249; see Engineers v. Chicago, R. I. & P. R. R. Co., 382 U. S. 423, 426-427). Modern conditions have changed the attitude of the Supreme Court towards full crew legislation. Thus, in Engineers v. Chicago, R. I. & P. R. R. Co. (supra, pp. 429-432), that court discussed changing technological conditions in the railroad industry and the associated history of economic bargaining and compromise. This court does as much too (see the majority opinion, pp. 11-12). The Supreme Court upheld the convening of a three-Judge District Court to decide anew the constitutionality of the Arkansas statute, which court then struck it down as unconstitutional (Chicago, R. I. & P. R. R. Co. v. Hardin, 274 F. Supp. 294).
*18 As the entire court agrees, the constitutional basis for the full crew laws lies in the exercise of the police power to protect the public safety and not in the making of economic adjustments between railroads and railroad labor. Certainly, that has been the only basis preferred to support the full crew laws.
The evidence amply supports, and the railroads do not contend otherwise, that the presence of an assistant to the engineer, however termed or titled, in the engine cab is justified at all times, except when occasions require that he fulfill his functions as assistant by signaling from the ground, as in yard service. That is not the issue in the case. The issue is whether safety requires that such an assistant be assigned to the engine crew, separate from the train crew.[1] The argument that brakemen on the train crew do not or will not have the training or skills required to assist the engineer is blasted by the practice of the railroads in those States that permit it, and in neighboring Canada, to have some train crew brakemen so trained, and indeed, to be in the line of promotion to diesel engineers. Hence it is a false issue to argue that the engineer’s assistant must have special training. The answer is a concession that he must, although not necessarily the full training of an engineer, but that such training may be obtained and required of one or more members of the train crew.
In the 1930’s, and earlier, before many of the mechanical and technological advances of today, and before the full displacement of the steam locomotive by the diesel engine, both engines and trains required sufficiently large complements of men that it did not seem unreasonable to keep the complements separate. There was more than enough work, or so it appeared, for all the men in each complement. But with the state of the railroad art today, together with straitened economic conditions in railroading, the evidence shows that the continued *19 enforced separation of the men who perform the two kinds of functions in the operation of a train is unreasonable, if safety of operation is the only proper justification. The many automatic and semi-automatic fueling, switching, and coupling arrangements today do not justify specialized manpower for each of the historically equivalent manual operations of another day (see Engineers v. Chicago, R. I. & P. R. R. Co., supra).
On this view, there is no problem of undoing affirmed findings of fact conclusive on this court. Rather, there is involved the review of inferences that are not sustainable in reason, namely, that because engineers need assistants, those assistants must come from a segregated, inviolate engine crew, fully trained as engineers, and that a functionally merged engine-train crew is dangerous or logically impossible. On a parallel view, the argument does not suffice that, if there were a statutory or administrative substitute for the offending “rigid” statute, the equivalent would have to be stated in the form of some generalization or rule. The point is that a valid rule or statute would (and could) require no more than an assistant to the engineer, and not that he be always a separate member of the engine crew isolated by training, function, and regular promotion from the train crew.
This conclusion is supported by the reports, set forth in Appendix A to the railroads’ brief, of numerous commissions and boards which have examined and rejected the need for ‘ ‘ firemen ’ ’ in diesel locomotives, as an independent and separable job function, for safety reasons (see, e.g., Report of the Royal Commission on Employment of Firemen on Diesel Locomotives in Freight and Yard Service on the Canadian Pacific Railway [1957], esp. at p. 18; Report of the Presidential Railroad Commission [1962], esp. at pp. 40, 43, 45; Opinion of Neutral Members of National Mediation Board, Arbitration Board No. 282 [1963], esp. at 41 L A 687-688; Report of the National Joint Board Established Pursuant to the Award of Arbitration Board No. 282 [1966], esp. at pp. 64, 73, 75, 76, 89, 108).
The short of it is that no subtlety can conceal what is a matter of common knowledge and what comes through the record and argumentation in this case, namely, that the effect and, indeed, the sole purpose of the full crew law today is a maneuver in *20 economic and political bargaining, and not a safety measure. To a certainty, a legislature may regulate economic matters in the public economic interest or in the interest of safety. What it may not do, because it would be in violation of constitutional limitations, is to regulate economic matters in the special interest of a special group. This is the difference between the power to regulate safety and to legislate ‘ ‘ featherbedding” in the interest of a special group. In the present context, the questioned statute is an unwarranted imposition on the railroads in the State, deprives them of due process and the equal protection of the laws, and is therefore unconstitutional.
Accordingly, I dissent and vote to reverse and grant judgment in favor of plaintiffs.
Chief Judge Fuld and Judges Burke and Eager [2] concur with Judge Bergan; Judge Breitel dissents and votes to reverse in an opinion in which Judges Scileppi and Jasen concur.
Upon reargument: Order affirmed.

. Designated pursuant to section 2 of article VI of the State Constitution in place of Keating, J., disqualified.