Commonwealth, Appellant, *v.* One Dodge Sedan.

Argued April 26, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Thomas I. Guerin,* with him *Claude T. Reno,* Attorney General, for appellant.

*Edmund Z. Spiers,* with him *Clarence M. Freedman,* for appellee.

OPINION BY KELLER, P. J., July 19, 1940:

This is an appeal by the Commonwealth from the refusal of the Court of Quarter Sessions of Philadelphia County to order the forfeiture, and delivery to the Liquor Control Board, of a Dodge Sedan motor vehicle alleged to have been unlawfully used by its owner within this Commonwealth in the illegal importation, possession and transportation of intoxicating liquors.

The following facts in evidence are not disputed:

Ambrose Clark, Jr., the owner of the vehicle, operated a retail licensed store in Millville, New Jersey, his business being similar to that of a retail liquor dealer in this State. On December 13, 1939 about 5:45 o'clock P. M. his Dodge Sedan car was observed by a Pennsylvania Liquor Control Enforcement officer and a Federal Agent cooperating with him—who were on the lookout for violations of the laws regulating intoxicating liquors —in front of the Dealers Liquor Company, Ninth Street and Atlantic Avenue, Camden, N. J., being loaded with a large supply of liquors. The officers had reason to believe that liquors were being unlawfully imported into

Pennsylvania from this wholesale distributor's store. About 6:15 or 6:30, the car moved from the loading platform to about 3040 Ninth Street, and after a few minutes another car bearing a New Jersey registration pulled in front of the Dodge Sedan and both cars proceeded in a roundabout way toward Philadelphia, crossed the Delaware River Bridge and drove to Vine Street, Philadelphia. There the first car, which was driven by one Cohen, the owner or proprietor of Dealers Liquor Company, pulled to a side and the Dodge Sedan was driven as far as Sixteenth and Vine Streets, when the officers stopped it, about 6:45 o'clock, found Clark driving it and a stock of liquors under the rear seat of the car, viz., two cases of whiskey, one case Pomeroy Greno, sixteen bottles Benedictine, four Cusenier Apricot, four Cusenier Cocoa, six quarts Fleischmann's Gin, four bottles Hennessy Brandy, two gallons Vineyard Sherry and one case Signet, costing (including New Jersey tax, $18.74) $258.94.

They seized the car and the liquors, and instituted this proceeding for the forfeiture of the vehicle.

Clark's story was that he had gone to Camden to get his Christmas holiday supply of liquors, etc., and brought his wife with him, who wanted to do some Christmas shopping in Philadelphia; that he left her at the Bridge trolley station at Broadway, Camden, under an arrangement to meet her at the Reading Terminal, Philadelphia, (12th and Market Streets) at 9:00 o'clock. He gave no explanation of what he was doing on Vine Street four squares west of Twelfth Street and three squares north of Market Street, beyond that he was going to park his car on a lot on Chestnut Street, and was passing the time until 9:00 o'clock, when he was going to meet his wife. The officer went to the Reading Terminal about 9:00 o'clock and found Mrs. Clark there, who corroborated her husband's story.

Clark testified that he knew he had to have a trans-

portation license in New Jersey in order to be able to transport any liquor in that State; and had such transportation insignia on his car; that after he met his wife, it was his intention to drive back into New Jersey and take the liquors to his store in Millville.

The court below was of opinion that there were many suspicious circumstances in connection with the indirect drive to the Delaware River Bridge and Clark's journey up Vine Street over two hours before he was to meet his wife at Twelfth and Market, but found that he was not intentionally violating the law and dismissed the proceeding and ordered the car delivered to him.

We are of opinion that the *forfeiture of the vehicle* does not depend upon a wilful and intentional violation of the liquor laws; that if Clark was violating the laws when the vehicle was seized, the seizure was properly made and it was the duty of the court to order the vehicle forfeited and delivered to the Liquor Control Board: that there was a violation of our liquor laws by Clark, and that the forfeiture and delivery should have been ordered by the court.

Appellee's counsel contends that the liquor was moving in interstate commerce and that the law enforcement officers in this State had no legal authority to seize it. Neither the premise of fact nor the conclusion of law is valid.

The liquor was not being transported into or through Pennsylvania for the purpose of delivery in New Jersey. Appellee testified that it was bought in New Jersey for delivery and use in New Jersey. He brought it into Pennsylvania, according to his story, not for the purpose of a more convenient delivery to some point in New Jersey, but to meet and pick up his wife, and when he had done so, it was his intention to go back to Camden and thence to Millville, which is almost due south of Camden and most conveniently reached from

central Philadelphia by way of that city. See *Blackmore v. P. S. C.*, 120 Pa. Superior Ct. 437, 183 A. 115; *Waer Bus Co. v. P. S. C.*, 117 Pa. Superior Ct. 514, 517, 178 A. 157. His legal conclusion is likewise unsound. In support of it he cites an excerpt from our opinion in *Com. v. One Dodge Motor Truck*, 123 Pa. Superior Ct. 311, 330, 331, 187 A. 461, affirmed in 326 Pa. 120, 191 A. 590, where we said: "As nothing to the contrary appears in the case we may take it for granted that Transcontinental Carriers, Inc. [which transported the five cartons in question from Louisville, Ky. to Pittsburgh, Pa.] was legally authorized to transport these liquors from Louisville, Kentucky, to Pittsburgh, Pennsylvania. Had it continued their transportation from Pittsburgh, Pennsylvania, to Baltimore, Maryland—without such detention at Pittsburgh, for the use and profit of the owners, as to subject it to the police power of this Commonwealth (*General Oil Co. v. Crain,* supra, [209 U. S. 211])— it would not have been in violation of any law of this Commonwealth and the whiskey would not have been subject to seizure, condemnation and forfeiture. But if Transcontinental Carriers, Inc. did not see fit itself to carry this whiskey from Pittsburgh to Baltimore, and, instead, transshipped it at Pittsburgh to another carrier, it was its duty to see that the carrier thus selected to complete the transportation and delivery was authorized by our law to transport and deliver the same." Counsel overlooks that we assumed in that case that Transcontinental Carriers, Inc., in transporting the whiskey from Louisville to Pittsburgh, *was legally authorized to do so*—that is, that it possessed a federal permit recognized by the laws of this Commonwealth, which authorized it to carry liquors into and out of this State in interstate commerce. The statute involved in that case was the Act of December 8, 1933—Special Session of 1933-34, P. L. 57, amending the Act of February 19, 1926, P. L. 16, which was a supplement to the

Act of March 27, 1923, P. L. 34, and which provided, *inter alia,* in section 3, that it should be unlawful for and person (except as exempted in section 5) to manufacture, ...... or transport for hire within this Commonwealth any alcohol or alcoholic liquid without a permit from the Commonwealth as provided in the Act. It specially provided in section 4 for the registering with our Liquor Control Board of federal permits to manufacture, ...... or transport for hire such alcohol or alcoholic liquid within this State in interstate commerce. That Act has been amended and re-enacted by the Act of June 16, 1937, P. L. 1811.

The statute involved in the present proceedings is the Act of June 16, 1937, P. L. 1762, known as the Pennsylvania Liquor Control Act and entitled "An Act to regulate and restrain the sale, manufacture, *possession, transportation, importation,** traffic in and use of alcohol and alcoholic and malt or brewed beverages"; etc. It is provided in section 3(a) "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

It provides for the creation of the Pennsylvania Liquor Control Board, which (sec. 201) "shall have the power and its duty shall be: (a) To buy, import, or have in its possession for sale and sell, liquor and alcohol in the manner set forth in this act" and "(b) To control the manufacture, *possession,** sale, consumption, *importation,** use, *transportation* and delivery of liquor, alcohol and malt or brewed beverages in accordance with the provisions of this act"; etc.

It provides in section 415 for the issuance of importer's licenses, which shall permit the holder to bring

---

* Italics supplied.

or import liquor from other states, foreign countries, etc., and to purchase liquor from manufacturers located within this Commonwealth to be sold outside this Commonwealth, or exclusively to Pennsylvania Liquor Stores within this Commonwealth; and provides further that "All importations of liquor into Pennsylvania by the licensed importer shall be consigned to the Pennsylvania Liquor Control Board or the principal place of business or authorized place of storage maintained by the licensee."

Among other restrictions, it provides, in section 602(2), 47 PS §744-602(2); "It shall be unlawful for any person, except a manufacturer, or the board, or the holder ...... of an importer's license, to possess or transport any liquor or alcohol within this Commonwealth which was not lawfully acquired prior to January 1, 1934, or has not been purchased from a Pennsylvania Liquor Store, or in accordance with the board's regulations. The burden shall be upon the person possessing or transporting such liquor or alcohol to prove that it was so acquired." And section 611 provides that no property rights shall exist in any liquor, etc. illegally possessed, or in any vehicle, etc. used in the illegal transportation of liquor, etc., and the same shall be deemed contraband and shall be forfeited to the Commonwealth; and it contains stringent provisions *requiring* the courts to *enforce* these provisions for the forfeiture of liquors illegally possessed and vehicles, etc., used in their illegal transportation.

Knowing the evils which can result from the violation of these salutary laws, it is not for courts to refuse to carry their punitive provisions into effect, on the ground of their harshness. Any alleviation of their penalties is a matter for the legislature, not the courts. They are constitutional: *Com. v. Patsone,* 231 Pa. 46, 79 A. 928, affirmed *sub nom. Patsone v. Pennsylvania,* 232 U. S. 138; *United States v. Brig Malek Adhel,* 2

How. 210, 233, 234; *Dobbins' Distillery v. United States,* 96 U. S. 395; *Goldsmith-Grant Co. v. United States,* 254 U. S. 505, 509-513; *Com. v. One Chrysler Coupe,* 101 Pa. Superior Ct. 160, 162, 163, affirmed 304 Pa. 253, 155 A. 605; *Com. v. One Studebaker Sedan,* 140 Pa. Superior Ct. 197, 14 A. 2d 198.

Since the decision in *Com. v. One Dodge Motor Truck,* supra, the Supreme Court of the United States has reversed the two lower court Federal cases referred to in that opinion (pp. 318, 319), *Joseph Triner Corp. v. Arundel,* 11 Fed. Supp. 145, and *Young's Market Co. v. State Board of Equalization,* 12 Fed Supp. 140. In *State Board v. Young's Market Co.,* 299 U. S. 59, the Supreme Court, speaking through Mr. Justice BRANDEIS, held that under the 21st Amendment a State could prohibit the *importation* of liquors even though it did not prohibit their manufacture and sale—"Surely the State may adopt a lesser degree of regulation than total prohibition" (p. 63). "The words used are apt to confer upon the State the power to forbid all importations which do not comply with the conditions which it prescribed" (p. 62). It also held, in effect, that since the 21st Amendment the right of a State to prohibit or regulate the importation of intoxicating liquors is not subject to limitation by Congress under the Commerce Clause of the Constitution; and that state regulations of the liquor traffic were not void under the Equal Protection Clause of the 14th Amendment. "A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth" (p. 64).

In *Mahoney v. Triner Corp.,* 304 U. S. 401, the Supreme Court, again through Mr. Justice BRANDEIS, reversed the decision of the District Court in 11 Fed. Supp. 145, supra, and held that since the adoption of the 21st Amendment, the Equal Protection Clause is inapplicable to imported intoxicating liquor (p. 403).

And in *Indianapolis Brewing Co. v. Liquor Control*

*Com.,* 305 U. S. 391, the Court, speaking through the same noted Justice, squarely ruled that "Since the 21st Amendment, ...... the right of a State to prohibit or regulate the importation of intoxicating liquor is not limited by the Commerce Clause" (p. 394).

In *Ziffrin, Inc. v. Reeves,* 308 U. S. 132, the Supreme Court of the United States sustained a statute of Kentucky which limited the transportation of liquors within that State to licensed common carriers, and speaking through Mr. Justice McREYNOLDS, said "The Twenty-first Amendment sanctions the right of a State to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause. Without doubt a State may absolutely prohibit the manufacture of intoxicants, their transportation, sale or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Further, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect to them. *Clark Distilling Co. v. Western Maryland Ry. Co.,* 242 U. S. 311, 320; *Crane v. Campbell,* 245 U. S. 304, 307; *Seaboard Air Line Ry. v. North Carolina,* 245 U. S. 298, 304; *Samuels v. McCurdy,* 267 U. S. 188, 197-198. Having power absolutely to prohibit manufacture, sale, transportation, or possession of intoxicants, was it permissible for Kentucky to permit these things only under definitely prescribed conditions? Former opinions here make an affirmative answer imperative. The greater power includes the less. *Seaboard Air Line Ry. v. North Carolina,* supra. The State may protect her people against evil incident to intoxicants, *Mugler v. Kansas,* 123 U. S. 623; *Kidd v. Pearson,* 128 U. S. 1; and may exercise large discretion as to means employed. Kentucky has seen fit to permit manufacture of whiskey only upon condition that it be sold to an indicated class of customers and transported in definitely specified ways. These conditions are not unreasonable and are clearly appropriate for

effectuating the policy of limiting traffic in order to minimize well-known evils, and secure payment of revenue. The statute declares whiskey removed from permitted channels contraband subject to immediate seizure. This is within the police power of the State; and property so circumstanced cannot be regarded as a proper article of commerce. *Sligh v. Kirkwood,* 237 U. S. 52, 59; *Clason v. Indiana,* 306 U. S. 439. ...... The two cases last cited [*State Board v. Young's Market Co.,* 299 U. S. 59, 63; *Clason v. Indiana,* 306 U. S. 439] recognize that the State may decline to consider certain noxious things legitimate articles of commerce, and inhibit their transportation. Property rights in intoxicants depend on state laws and cease if the liquor becomes contraband."

In view of these pronouncements of the Supreme Court of the United States, the decision in *United States v. Gudger,* 249 U. S. 373, relied on by the court below, is not applicable to the facts of this case.

We pointed out in *Com. v. One Dodge Truck,* supra, (pp. 327-328) the ease with which the enforcement of liquor laws may be evaded by the use of automobiles, auto trucks, etc., and the necessity for the strict control of such means of transportation, if the traffic in illegal or bootleg liquors is to be effectually restrained. See *United States v. Simpson,* 252 U. S. 465.

It was clearly established that the appellee, when stopped by the law enforcement officers, had in his possession and was transporting in this Commonwealth alcoholic liquors which he had just purchased in New Jersey—which had not been lawfully acquired by him prior to January 1, 1934 and which he had not purchased from a Pennsylvania Liquor Store; and he held no Pennsylvania importer's license. He was accordingly in possession of and transporting these liquors illegally and contrary to the Act of 1937, P. L. 1762. His possession of them being illegal, the liquors were

contraband and forfeited to the Commonwealth; and the vehicle in which he was illegally transporting them was likewise forfeited to the Commonwealth, and should have been ordered delivered to the Liquor Control Board for disposition according to law.

The assignment of error is sustained. The order is reversed, and the record is remitted to the court below with directions to enter an order of forfeiture as prayed in the petition of the Liquor Control Board.

Costs to be paid by the appellee.