Commonwealth *v.* One 1939 Cadillac Sedan et al., Appellant.

Argued December 12, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Herman A. Becker,* for appellant.

*Horace A. Segelbaum,* Deputy Attorney General, with him *J. Myron Shimer,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY BALDRIGE, P. J., January 18, 1946:

The G. F. C. Corporation, intervenor, has appealed from the decree of the lower court ordering a forfeiture of a 1939 Cadillac sedan automobile to the Commonwealth.

David Middleton on the night of November 11, 1944, stole a large amount of liquor from a Pennsylvania Liquor Store located in Philadelphia. On December 3, 1944, he was arrested, but escaped from custody and was rearrested on December 6. He was convicted of the crime of burglary on the 28th of that month. It was not until December 11, that the enforcement officers received information that Middleton used this Cadillac car on November 11, 1944, to transport the stolen liquor. The officers, after completing their investigation, obtained a search warrant and the automobile was seized on Jan-

uary 5, 1945, in the garage of Scott Smith Cadillac, Inc., located in Philadelphia where it was delivered by Mrs. Middleton to be repaired.

George Gorson, the former owner of this automobile, leased it under an agreement dated August 14, 1944. In the body of the lease David Middleton was named as the lessee, but it was signed by both Marcella Johnson Middleton and David Middleton, as "lessee." The title to the car was assigned by Gorson to Mrs. Middleton as the "purchaser, or lessee." The consideration, $1480, was to be paid by a cash payment of $225, and a credit allowance of $275, the trade-in value of a 1937 Packard, the title of which was in Mrs. Middleton. The balance of the purchase price was financed by Gorson through the G. F. C. Corporation, to whom this bailment lease was assigned. The husband testifield that he lent his wife "about $200" of the cash payment. The Pennsylvania Liquor Control Board filed its petition for a forfeiture and condemnation of the car. The G. F. C. Corporation then intervened, and in its answer alleged that the seizure was illegal for reasons to which we later will refer.

The Act of November 29, 1933, Sp. Sess., P. L. 15, known as the Pennsylvania Liquor Control Act, was amended and reenacted by the Act of July 18, 1935, P. L. 1246, and later by the Act of June 16, 1937, P. L. 1762, 47 PS §744-201, which is entitled, as amended, "An act to regulate and restrain the . . . transportation, importation, traffic in, and use of . . . alcoholic . . . beverages; . . ." Section 201(f) provides that the officers of the Liquor Control Board shall have power and authority, upon reasonable and probable cause to seize any vehicles "which are or have been used in the unlawful . . . transportation . . ." of liquor. It is not disputed that the transportation of the liquor was unlawful under section 602.

Claimant argues that the court below erred in declaring a forfeiture of the automobile as (1) it was not

being used in the illegal transportation of liquor when seized, and (2) it had repossessed the car and was the owner thereof, it was not subject to seizure for its previous illegal use. It is true that in each of the cases cited by the court below the automobile was seized when illegally transporting liquor. Nor has any case of our appellate courts been called to our attention and we have found none that has decided the exact question before us. In neither *Commonwealth v. One Dodge Motor Truck,* 123 Pa. Superior Ct. 311, 187 A. 461, affirmed in 326 Pa. 120, 191 A. 590, nor *Commonwealth v. One Dodge Sedan,* 141 Pa. Superior Ct. 34, 14 A. 2d 600, cited by the appellant, did we hold that the Act of 1937, supra, is confined to property actually engaged in the illegal transportation at the time of the seizure.

The plain language of section 201(f) means that a past, as well as a present, use of a vehicle in the illegal transportation of liquor subjects the vehicle to seizure. To hold otherwise would entirely ignore the words "or have been used." This we cannot do as power is not within the court to delete or disregard them: *Commonwealth v. Hubbs,* 137 Pa. Superior Ct. 229, 239, 8 A. 2d 611. "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit:" Statutory Construction Act, May 28, 1937, §51, Art. IV, P. L. 1019, 46 PS §551. A comparison of the provisions of the several statutes throws considerable light on the question of legislative intent. The Act of 1933, supra, did not give to the Liquor Control Board, the right to have its investigators seize and confiscate vehicles used in the illegal transportation of liquor. That authority appears first in the Act of 1935, which provided that vehicles "which are being used in . . . transportation" of liquor shall be seized. It was not until the amendment of 1937 that the board was given power to seize "any . . . vehicles which are *or have been used* in the unlawful transportation" of liquor. (Italics supplied). This change of lan-

guage, by including the past, as well as the present, use of any vehicle, is very significant (*Ogilvie's Estate,* 291 Pa. 326, 333, 139 A. 826; *Dixon's Case,* 138 Pa. Superior Ct. 385, 11 A. 2d 169) and completely answers the first contention of the appellant.

In support of its second position Frank J. Borss, its district manager and sole witness, testified of a default on November 29, 1944, in payments due after an extension had been granted, and that the car was repossessed by him, but he did not say when he took that action, nor did he claim that he, or anyone else acting for appellant, took physical possession of it. The car remained until seized by enforcement officers, in the garage where Mrs. Middleton had taken it. The trial judge was not bound to accept as verity this oral testimony, and in view of its inexplicit nature, and the law applicable to his findings, he was warranted in stating: "In the case at bar the title, possession and rights of the registered owner and the finance company remained the same during the period of the use of the automobile in violation of the law and the period of seizure."

Be that as it may, whether or not it was repossessed prior to its seizure, as contended, is immaterial. The 1937 statute is not to be given a narrow interpretation. Section 3 states: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . . ; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." What meaning should be given to "any vehicle"? A more comprehensive word than "any" could hardly be employed. It means indiscriminate, or without limitation or restriction. See Oxford English Dictionary and Webster's New International Dictionary. Any vehicle, whoever the owner may be, which has been used for the illegal transportation of liquor, is subject to seizure. If further proof is required in support of the intention of the legislature it is found

in section 611(a) that "No property rights shall exist in any . . . vehicle, . . . used in the . . . illegal transportation of liquor . . . , and the same shall be deemed contraband and shall be forfeited to the Commonwealth" and that the proceeding for the forfeiture or condemnation of all property shall be in rem.

If one pursues his investigation, by comparing section 611(6) of the act of 1933, supra, with the same numbered section of the 1937 statute, more evidence is found. In the former it was provided that any person claiming ownership, or right of possession, to any seized vehicle, could at any time before its sale present a petition to the court and claim ownership or right of possession and if he proved to the satisfaction of the court that the vehicle was used in violation of law by a person other than claimant and without his knowledge or consent, the court could order the same returned or delivered to the claimant.

In the latter act that portion of the 1933 Act is entirely omitted, and it provides that when a vehicle is seized and condemned, the court shall order it to be delivered to the board for its use or for sale or disposition at the board's discretion. Notice of a sale shall be given in such manner as the board may prescribe and the proceeds shall be paid into the State Stores Fund. No reference whatever is made to the alleged right of anyone claiming ownership and ignorance of the illegal use of a seized vehicle.

It follows that the lack of knowledge by the appellant that the automobile was used for illegal purposes is immaterial. In *Commonwealth v. One Dodge Sedan,* supra, we held that it was mandatory on the part of the court, regardless of whether the unlawful use of the automobile in question was known to, or authorized by, the intervenor or bailor, to decree its forfeiture and condemnation. A finance company incurs the risk of having an automobile to which it claims title forfeited if used in the illegal transportation of intoxicating liquors.

It is incumbent upon those in that business to use discrimination in determining with whom they will deal. The language and the meaning of this statute is so plain that we have no doubt that under the facts before us the seizure of this automobile was legal. If there are situations where the broad language of the statute would not apply they have not been presented in this case.

The order of the court below is affirmed at appellant's costs.