Pennsylvania Labor Relations Board, Appellant,
*v.* Rooney.

Argued May 29, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

*Herbert N. Shenkin*, Assistant Attorney General, with him *Oscar Bortner*, Assistant Attorney General, *James F. Wildeman*, Assistant Attorney General, and *Thomas D. McBride*, Attorney General, for appellant.

*George T. Kelton*, with him *Eastburn, Begley & Fullam*, for appellee.

OPINION BY MR. JUSTICE ARNOLD, June 28, 1957:

On July 16, 1955, the Hotel and Restaurant Employes Union, American Federation of Labor, hereinafter called the Union, demanded that the Lavender

Hall Restaurant, hereinafter called the Employer, recognize it as the collective bargaining agent for its forty-five employes. The employes included dishwashers, waitresses, relish girls, busboys, bartenders, and others. The request for recognition was immediately denied by the employer, and twenty-two employes thereupon left their work and went on strike.

It was not until August 26, 1955, that the union petitioned the Pennsylvania Labor Relations Board to conduct an election to determine whether or not it was entitled to certification as the collective bargaining agent. At the same time it lodged complaints against the employer for unfair labor practices (subsequently dismissed by the board). The board set September 8, 1955, for hearing as to the conduct of an election. It further ordered that all employes on the employer's payroll as of July 16, 1955,[1] August 26, 1955,[2] and September 8, 1955,[3] were entitled to vote; the parties to protect their rights by proper challenge. In addition, the board expressly ruled that it was not passing upon the qualifications of the employes. The election was held September 14, 1955, with ballots being presented by forty-nine persons out of the seventy persons preliminarily held by the board to be entitled to vote. Twenty-two votes were unsuccessfully challenged by the employer (being the employes who went on strike after it was called, and hence were alleged as not being employes). Fifteen votes were successfully challenged by the union; being workers who entered the employ subsequent to the date of the strike, but before the petition for an election was filed. The remaining twelve votes were not challenged as they were employes on July 16,

---

[1] The date of the employes' strike for recognition.

[2] The date of petition for certification of election.

[3] The date of hearing on the election.

1955, and worked during the existence of the strike. These twelve votes were cast against the union.

The board concluded that only the employes on the July 16, 1955, payroll were eligible to vote, and sustained the union's challenge. This resulted in the certification of the election by a vote of twenty-two to twelve. In addition, the board ruled that fifteen replacement workers were ineligible to vote. These replacement workers had gone to work for the employer prior to the filing of the petition for certification of election. Thereupon, on April 5, 1956, the board dismissed the unfair labor practices charge, and certified the union to be the bargaining agent for the employes. The employer appealed to the court below, which reversed.

This appeal presents three narrow questions: (1) the date for determination of the right to vote; (2) whether replacement workers hired during the existence of a "recognition" strike, but prior to the filing of the petition for certification, were eligible to vote; and (3) whether workers who leave their place of employment subsequent to the strike but prior to the petition for certification of the election are eligible to vote if they fail to produce testimony of not having obtained ". . . other regular and substantially equivalent employment."

Section 3 (d) of the Pennsylvania Labor Relations Act, 43 PS §211.3, reads: "The term 'employe' *shall include any employe* . . . and shall include any *individual* whose work has ceased as a consequence of, or in connection with, any current labor dispute, . . . *and who has not obtained any other regular and substantially equivalent employment* . . ." (Italics supplied). Nowhere in the Act is there a provision establishing the date to be fixed by the board for determination of the eligibility of workers to vote in a certification election.

The cut-off date must of necessity be fixed as of the date when the petition for certification of election is filed with the board, rather than the date of the employes' strike for recognition, or the date of hearing on the election. Fixing it as of the date of strike would enable the strikers, by postponing the petition for certification of the election, to delay indefinitely the establishment of the date of eligibility of voters. It is conceivable that the hearing could be of such duration as seriously to affect the eligibility of certain employes, and therefore it would be unfair to them to use the date of hearing on the election as a cut-off date.

The board's conclusions in interpreting these provisions are unreasonable and arbitrary. It completely ignored the term "any employe." The Act states "any" and we hold that to be an inclusive word; it is not a word of limitation. Certainly the phraseology of the Act, "any employe . . ." is broad enough to include the replacement workers. In *Commonwealth v. One 1939 Cadillac Sedan,* 158 Pa. Superior Ct. 392, 396, 45 A. 2d 406, construing an Act of Assembly, the Superior Court declared that "A more comprehensive word than 'any' could hardly be employed. It means indiscriminate, or without limitation or restriction."

The legislative intent was to protect those employes who left their employment during the strike or labor dispute. But it is also clear that to preserve the status which he once enjoyed, the employe must come forward with proof that he had not obtained ". . . other regular and substantially equivalent employment." It is argued that this burden should rest upon the employer; but this would impose a difficult if not impossible task. Obviously the person best qualified to prove the whereabouts of the employe and the place of employment during the strike is the striker himself. One of

the given events having occurred, to fix his employe status, he must comply with the conjunctive condition, and must establish, in the words of the Act, section 3(d), that "[he] . . . has not accepted other regular and substantially equivalent employment." Cf. *Standard Lime & Stone Co. v. National Labor Relations Board*, 97 Fed. 2d 531.

As a practical matter the purported collective bargaining unit should petition for certification within a reasonable time after denial of recognition by the employer. Section 7 (c) of the Pennsylvania Labor Relations Act, 43 PS §211.7, provides the procedure for acquiring certification of representation. It does not require any lapse of time after denial of recognition has been made by an employer. Therefore it would seem that simultaneous action by the representative union would not unduly burden the employes; whereas the delay in petitioning for certification would be burdensome to an employer if he were expected to produce evidence that an employe who had struck had obtained regular employment and would therefore be ineligible to vote: *In re: Portland Gas & Electric Company*, 2 N.L.R.B. 1143. See generally Rothenberg on Labor Relations, pp. 546-550.

We cannot, as appellant urges, effectuate the spirit and policy of the Act and completely disregard its plain language. See Statutory Construction Act. May 28, 1937, P.L. 1019, Article IV, §51; 46 PS §551.

Order affirmed.

Mr. Justice MUSMANNO dissents.