ZAGER, Justice
(dissenting).
I respectfully dissent. ’ In my opinion, Dawley and MeMenimen were qualified to act as the organizers of Dolphin Residential Cooperative, Inc. (Dolphin) and satisfied the requirements of Iowa Code section 499A.1(1) (2011). Thus, Dolphin was properly organized under chapter 499A and is entitled to favorable tax treatment by virtue of its status as a residential cooperative. I would affirm the decision of the district court.
The statutory language the majority concentrates on is “organize themselves for the following or similar purposes: Ownership of residential, business property on a cooperative basis.” Iowa Code § 499A.1(1). According to the majority, this language suggests the organizers cannot organize others, but instead must organize themselves. Thus, it concludes Dawley and MeMenimen cannot serve as the organizers of Dolphin because they did not intend to have a future interest in the cooperative. In other words, the majority injects an intent requirement into our meaningful organizational test that has no basis in the statute or our caselaw. In effect, the majority’s analysis imposes a new requirement that the organizers of a residential cooperative also form its initial membership base. In my opinion, these requirements are not supported by the plain and ordinary language of the statute and are further undermined by a broader examination of chapter 499A as a whole. Moreover, these requirements are wholly illogical and contrary to our decision in Krupp Place 1 Co-op, Inc. v. Board of Review, 801 N.W.2d 9 (Iowa 2011).
The plain language of the statute provides: “Any two or more persons of full age, a majority of whom are citizens of the *660 state, may organize themselves.... ” Iowa Code § 499A.1(1) (emphasis added). Webster’s Third New International Dictionary defines “any” as “one indifferently out of more than two: one or some indiscriminately of whatever kind.” Webster’s Third New International Dictionary 97 (unabr. ed.2002). As we have previously noted, “‘A more comprehensive word than “any” could hardly be employed. It means indiscriminate, or without limitation or restriction.’” Iowa-Ill. Gas & Elec. Co. v. City of Bettendorf, 241 Iowa 358, 364, 41 N.W.2d 1, 4-5 (1950) (quoting Commonwealth v. One 1939 Cadillac Sedan, 158 Pa.Super. 392, 45 A.2d 406, 409 (1946)). Given the legislature’s use of the broad term “any,” I cannot conclude the statute requires inquiry into the intent of a cooperative’s organizers.
Moreover, read in its entirety, chapter 499A clearly does not require the organizers of a residential cooperative to have any direct interest in the cooperative either at the time of its organization or at some point in the future. See Miller v. Marshall County, 641 N.W.2d 742, 749 (Iowa 2002) (“We must read each provision of a statute together, without according undue importance to any single provision.”). Nor does the statute in any way contemplate the de facto member-organizer requirement now imposed by the majority. Chapter 499A clearly distinguishes between organizers, directors, and members, establishing different roles for each. The legislature’s use of distinct terms to refer to different classes of persons who take part in the process of forming, operating, and participating in a chapter 499A cooperative manifests its intent that these participants serve different functions. See Miller, 641 N.W.2d at 749 (“We assume the legislature intends different meanings when it uses different terms in different portions of a statute.”). The legislature also clearly demonstrated its ability to differentiate between these participants and established different rights and duties for each distinct class. See, e.g., Iowa Code §§ 499A.1(1) (establishing organizers’ duty to “adopt, and sign and acknowledge the articles of incorporation”), .2A (establishing directors’ duty to adopt initial bylaws), .3C (establishing members’ right to vote), .19 (establishing members’ right to elect directors). Had the legislature intended to require that the organizers of a residential cooperative possess an interest in a chapter 499A cooperative or that they ultimately become members of the cooperative, it could have stated as much as it has in other contexts. See, e.g., id. § 496C.6 (“One or more individuals having capacity to contract, each of whom is licensed to practice in this state a profession which the professional corporation is to be authorized to practice, may act as incorporators of a professional corporation.” (Emphasis added.)); id. § 499.5(2) (“All individual incorporators of agricultural associations must be engaged in producing agricultural products ....” (Emphasis added.)). But nothing in chapter 499A requires the organizers of a residential cooperative to have any interest in the cooperative or to become members of the cooperative. We should not, under the pretext of construction, read these requirements into the statute. Bank of Am., N.A. v. Schulte, 843 N.W.2d 876, 880 (Iowa 2014) (“Under the pretext of construction, we may not extend a statute, expand a statute, or change its meaning.”).
Significantly, nothing in chapter 499A requires the organizers of a residential cooperative to continue with the organization in any capacity after they file the articles of incorporation with the secretary of state and the cooperative becomes a corporate body. Under the statute, organizers serve a largely administrative function. Iowa Code section 499A.1(1) defines the function of organizers:
The organizers shall adopt, and sign and acknowledge the articles of incorpo *661 ration, stating the name by which the cooperative shall be known, the location of its principle place of business, its business or objects, the number of directors to conduct the cooperative’s business or objects, the names of the directors for the first year, the time of the cooperative’s annual meeting, the time of the annual meeting of its directors, and the manner in which the articles may be amended.
Further, outside of section 499A.1(1), chapter 499A makes no further reference to the organizers whatsoever. See Iowa Code §§ 499A.2-.25.
The majority conflates the duties of a cooperative’s organizers with those of its directors and, by extension, its members. The majority states, “It is thus entirely reasonable to require that organizers with such important powers should have a direct interest in the residential cooperative itself rather than be a bystander with no direct interest in the enterprise.” (Emphasis added.) But are the administrative powers listed above all that important? More significantly, where has the legislature made this judgment in the statute? The answer, of course, is that it hasn’t.
More fundamentally, under the statute once the cooperative comes into existence, its initial members need not, and perhaps cannot, be ascertained. Thus, it is illogical to read the statute as requiring that the organizers of a cooperative possess an interest in the cooperative, that members be organizers, or that all organizers become members. In fact, after the articles of incorporation are filed with the secretary of state, and before membership certificates are ever issued, Iowa Code section 499A.2 provides that the organization “shall become a body corporate” and “have power ... [t]o purchase, take, receive, lease ..., take by gift, devise or bequest, or otherwise acquire, and to own, hold, use and otherwise deal in and with any real or personal property or any interest therein.” Id. § 499A.2(4). Section 499A.2A further provides that the initial bylaws of the cooperative shall be adopted by the cooperative’s board of directors. Id. § 499A.2A. It also provides that “[pjrior to the admission of members to the cooperative, the power to alter, amend, or repeal the bylaws or adopt new bylaws is vested in the board of directors.” Id. § 499A.2A. These sections plainly contemplate a period in which a chapter 499A cooperative may have no members yet nevertheless legally operate.
Problematically, the majority’s logic applies to any two or more individuals who decide to organize themselves as a cooperative, not just these attorney organizers. The purpose of the cooperative may be to purchase undeveloped real estate, build an apartment complex on the real estate, and sell each of the residential units. Perhaps the cooperative’s plans fall through after acquiring the real estate, it never builds residential units, and it never admits members to the cooperative. Are we to conclude that the cooperative was not properly organized? Is the cooperative not entitled to favorable tax treatment with respect to property acquired and held during that period simply because its plans were unsuccessful? Maybe the organizers never intended to build the apartments, but instead intended to hold the real estate for investment purposes. The point is, in determining whether the cooperative was properly organized, we wouldn’t look back and make a judgment about the original motive and intent of the organizers. Neither should we make an inquiry about the original motive and intent of the organizers as part of our meaningful organizational test here.
Finally, the majority’s interpretation of the statute in essence requires that we revive the “actual use” test we explicitly rejected in Krupp only four years ago. *662 See 801 N.W.2d at 16 (“By enacting the amendment with an organizational test, the legislature avoided a fact intensive ‘actual use’ test_”). Take the previous example of the cooperative that has its building plans fall through after acquiring some undeveloped real estate. How would the majority decide whether that cooperative was properly organized under chapter 499A? It never got to the membership phase; thus, we can’t compare its members to its organizers. The only way to determine whether the property it holds is entitled to favorable tax treatment is to look to its actual operation during the interim period and ask: Was it actively making plans to go forward with what looks like a cooperative? This is plainly inconsistent with Krwpp, in which we held that “[t]he only fact finding required under [Iowa Code] section 441.21(11) is whether the property is owned by an entity organized under chapter 499A” and declined to look at the actual use of the property in classifying it for tax purposes. Id. at 15-16. In the future, courts will have to take a fact-intensive look behind the curtain and consider who the cooperative’s organizers were, who its initial members were, who the members are now, what the organizers and initial members’ intentions were, and how the cooperative is operating. This patently contradicts both the holding and spirit of Krwpp.
The statute and our decision in Krwpp plainly do not contemplate the requirement that an organizer have a direct interest in the cooperative or the de facto member-organizer requirement now imposed by the majority. Thus, in my opinion, Dawley and McMenimen were qualified to act as the organizers of the Dolphin cooperative. Further, Dawley and McMenimen satisfied the organizational requirements of section 499A.1(1). Section 499A.1(1) requires: 1) that there be “two or more persons of full age”; 2) a majority of those persons must be “citizens of the State”; 3) those persons must “adopt, and sign and acknowledge the articles of incorporation,” which must contain specific information; and 4) those persons must follow delineated procedures in filing the articles of incorporation with the secretary of state. See Iowa Code § 499A.1(1). Here, it is undisputed that Dawley and McMenimen are persons, there are two of them, and they are both over the age of eighteen. It is undisputed that they are both citizens of Iowa. It is undisputed that they adopted, signed, and acknowledged the articles of incorporation and that the articles contained the necessary information. It is undisputed that they filed the articles with the secretary of state on December 22, 2011, and that on December 23 the Iowa secretary of state issued a document entitled “Acknowledgment of Document Filed”’ confirming Dolphin’s articles of incorporation were effective as of December 22. Consequently, Dawley and McMenimen clearly satisfy our meaningful organizational test. See Krupp, 801 N.W.2d at 15 (“[C]hapter 499A imposes only an ‘organizational test,’ with no reference to the property’s actual use.’’). Dolphin was properly organized and is entitled to favorable tax treatment by virtue of its status as a residential cooperative.
There is no statutory or logical basis for inquiring into the motive or intent of the organizers of a cooperative, or for considering whether the organizers have some direct interest in the cooperative either at the time of its organization or at some point in the future. Neither is there any statutory or logical basis for the de facto member-organizer requirement now imposed by the majority. The majority’s new requirements are not supported by the statute and are plainly inconsistent with our holding in Krwpp. These considerations should have nothing to do with our analysis.
*663 The elephant in the room is that the majority, and the local taxing authorities, don’t like the loss of tax revenue resulting from the conversion of property from a commercial to a residential tax status. But the impression that these property owners are somehow taking advantage of the law should not really be our concern. The legislature made the policy decision to tax residential cooperatives more favorably. If people are upset about this, they should make their concerns known to the legislature, which has the power to correct this perceived injustice. I don’t believe it is for this court to arbitrarily adopt additional requirements not provided for in the statute to achieve this result. Dolphin was properly organized. I would affirm the decision of the district court.
WATERMAN, J., joins this dissent.